UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-337-MOC-DCK

| LAKITA SIMMONS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| ACCORDIUS HEALTH, LLC, | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on a Motion to Dismiss filed by Defendant Accordius Health, LLC, pursuant to Rule 12(b)(6) and/or Rule 56(f) of the Federal Rules of Civil Procedure. (Doc. No. 7).

### I. BACKGROUND

In this action, filed in state court and removed to this Court by Defendant, Plaintiff Lakita Simmons has filed a single claim against her former employer Defendant Accordius Health, LLC, alleging a violation of the North Carolina Retaliation in Employment Act ("REDA"), N.C. GEN. STAT. § 95-240 et seq., which, among other things, prohibits employers from terminating an employee in retaliation for bringing a claim under the North Carolina North Carolina Workers' Compensation Act, N.C. GEN. STAT. § 97-1 et seq. Defendant contends that a release that Plaintiff signed when settling her workers' compensation claim prohibits her from bringing this action. For the following reasons, the Court will deny Defendant's motion.

The following facts are relevant to this motion:

On November 25, 2018, Plaintiff suffered an on-the-job injury to her back while helping a patient up off the floor. (Compl. ¶ 4). Plaintiff remained off work through March 23, 2019,

1

when she was released to light duty work. (Id. at ¶¶ 10, 12). Plaintiff alleges that Defendant did not honor her doctor's restrictions. (Id. at ¶¶ 13-14). On July 8, 2019, Defendant terminated Plaintiff's employment. (Id. at ¶ 15). On July 24, 2019, Plaintiff filed a "Retaliatory Employment Discrimination Complaint Form" (hereinafter referred to as "NCDOL Complaint") with the North Carolina Department of Labor.[1] See (NCDOL Compl., Ex. 1). In completing the NCDOL Complaint, Plaintiff alleged that she was fired in retaliation for filing a workers' compensation claim. (Id.).

On April 20, 2020, almost nine months after the termination of her employment and the filing of the NCDOL Complaint, Plaintiff executed a settlement and release agreement, referred to here as the "Clincher Release."[2] The relevant provision of the Clincher Release is as follows:

> "NOW, THEREFORE, Lakita R. Simmons, for and in consideration of the compensation payments recited, and the medical benefits which shall be paid upon approval of the North Carolina Industrial Commission has and <u>does hereby release and forever discharge</u>, not only for herself but also for her heirs, next of kin, and personal representative(s), the said Defendant Health, LLC, United Wisconsin Insurance Company, and United Heartland, Employer Defendant, Carrier-Defendant, and Third-Party Administrator, respectively, of and <u>from any and all and every manner of action and actions, cause or causes of action, suits, debts, dues and sums of money, judgments, demands, and claims whatsoever</u>, which against the said Defendant Health, LLC, United Wisconsin Insurance Company, and United Heartland, Employer Defendant, Carrier-Defendant, and Third-Party Administrator, respectively, she ever had or may have by reason of or <u>growing out of the terms and provisions of the North Carolina Workers' Compensation Act</u>, on account of the alleged injury of November 25, 2018, which give rise to this claim for compensation and for any subsequent disability sustained by her, or medical bills incurred by her. Employee-Plaintiff knowingly and intentionally waives the right to further benefits under the Workers' Compensation Act for the injury which is the subject of this Agreement."

---

[1] This filing is required by N.C. GEN. STAT. § 95-242. See also Driskell v. Summit Contracting Group, Inc., 828 Fed. Appx. 858 (4th Cir. 2020); and Johnson v. North Carolina, 905 F. Supp. 2d 712 (W.D.N.C. 2012).

[2] "A 'clincher' or compromise agreement is a form of voluntary settlement used in contested or disputed cases." Ledford v. Asheville Hous. Auth., 482 S.E.2d 544, 546 (N.C. Ct. App. 1997)).

(Release, Ex. 3).

Then, on October 21, 2020, Plaintiff filed this action in state court, and Defendant removed the action to this Court on November 23, 2020.[3] Defendant filed its motion to dismiss, or alternatively, for summary judgment, on December 23, 2020. Defendant contends that the plain and unambiguous language of the Clincher Release signed by Plaintiff bars Plaintiff's REDA claim. Plaintiff contends, on the other hand, that the Clincher Release is clearly limited in scope to only Plaintiff's workers' compensation claims related to Plaintiff's injury, and not to her claim of her alleged retaliatory firing under REDA. Id.

**II.     STANDARD OF REVIEW**

Defendant styled its motion as one to dismiss under Fed. R. Civ. P. 12(b)(6) or, alternatively, for summary judgment under Fed. R. Civ. P. 56. Furthermore, both parties have submitted attachments that are outside of the pleadings—that is, Defendant has submitted the Clincher Release, and Plaintiff has submitted another release of claims that Defendant offered to Plaintiff after she signed the Clincher Release. Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." Bosiger v. U.S. Airways, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the

---

[3] As Defendant concedes in its Reply, this action was improperly removed. See 28 U.S.C. § 1445(c) (stating that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States"); see also Wiley v. United Parcel Serv., Inc., 227 F. Supp. 2d 480, 488 (M.D.N.C. 2002). Nevertheless, Plaintiff has waived the right to remand it, and the Court may not sua sponte remand it. See Lunsford v. Cemex, Inc., 733 F. Supp. 2d 652, 655 (M.D.N.C. 2010).

3

motion." FED. R. CIV. P. 12(d); see Adams Housing, LLC v. City of Salisbury, Md., 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).  Here, in addressing whether the execution of the Clincher Release in her workers' compensation settlement bars Plaintiff from bringing her REDA claim in this action, the Court has considered matters outside of the pleadings.  Therefore, it appears that the Court must convert the motion to dismiss to a summary judgment motion.  As the parties were on notice that conversion may occur, however, the Court does not need to provide the parties with further notice, and the Court will treat the motion as a motion for summary judgment.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.  The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving

party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 818 (4th Cir. 1995). When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III.    DISCUSSION

Release agreements such as the Clincher Release in this case are contractual in nature and must be interpreted under traditional notions of contract law. Weaver v. Saint Joseph of the Pines, Inc., 652 S.E.2d 701, 709 (N.C. Ct. App. 2007). Under North Carolina law, when the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court, and the court need not look beyond the contact's terms to determine the parties' intent. Piedmont Bank & Trust Co. v. Stevenson, 339 S.E.2d 49, 52 (N.C. Ct. App. 1986). Accordingly, a court may not look beyond the contract's four corners to interpret unambiguous terms. Id.

The North Carolina Supreme Court has described the effect of release agreements, stating, "A completed compromise and settlement … operates as a merger of, and bars all right to recover on, the claim or right of action included therein, as would a judgment duly entered in

5

an action between said persons." Jenkins v. Fields, 83 S.E.2d 908, 910 (N.C. 1954). "[A] release executed by the injured party and based on a valuable consideration is a complete defense to an action for damages for the injuries." Cunningham v. Brown, 276 S.E.2d 718, 723 (N.C. Ct. App. 1981). "A comprehensively phrased general release, in the absence of proof of contrary intent, is usually held to discharge all claims . . . between the parties." Hardin v. KCS Int'l, Inc., 682 S.E.2d 726, 735 (N.C. Ct. App. 2009) (quotation marks omitted).

North Carolina courts have found the following language to constitute a "comprehensively phrased release" that releases a defendant from all claims, absent proof of contrary intent: where the plaintiff agreed to release the defendant "from any and all claims of liabilities of whatever kind or nature, that you have ever had or which you now have, known or unknown[,]" see, e.g., Kraus v. Wells Fargo Sec., LLC, 721 S.E.2d 408, at *1 (N.C. Ct. App. 2012) (unpublished); where the plaintiff agreed to release the defendant from "all claims that [the plaintiff] may have against [the defendant] as a result of their dealings to date, and specifically including but not limited to the subject matter of this agreement and the civil action," see, e.g., Hardin, 682 S.E.2d at 735; and where the agreement stated that the parties released "any and all claims and causes of action of any kind or nature whatsoever which may exist, might be claimed to exist, or could have been claimed to exist by [the defendant] against [plaintiffs] and by [plaintiffs] against [the defendant]," see, e,g., Talton v. Mac Tools, Inc., 453 S.E.2d 563, 564 (N.C. Ct. App. 1995).

The Clincher Release in this case does not contain the same, broad language that North Carolina courts have found to be a comprehensive release of all claims, including Plaintiff's REDA claim here. As Plaintiff notes, Defendant specifically limits the scope of the release to claims arising out of the North Carolina Workers' Compensation Act. The Clincher Release

6

does not mention or refer to N.C. GEN. STAT. § 95-240 et seq., which is the statutory basis of Plaintiff's claims here, nor does the Clincher Release contain the comprehensive language necessary to release Defendant from any and all claims arising out of Plaintiff's workplace injury.  Plaintiff's REDA claim is not based on Plaintiff's medical injury that led to Plaintiff's filing of a workers' compensation claim, but, rather, on the termination of Plaintiff's employment, allegedly in violation of the N.C. GEN. STAT. § 95-240 et seq.  That is, although Plaintiff was allegedly wrongfully discharged for asserting her rights in a workers' compensation claim, Plaintiff's claim here arises out of the Chapter 95 of the North Carolina General Statutes, not Chapter 97.  Thus, Defendant's contention that the Clincher Release also applies to a retaliatory discharge claim pursuant to N.C. GEN. STAT. § 95-240 et seq. is without merit.

In support of its motion, Defendant cites Wiley v. United Parcel Service, Inc., 227 F. Supp. 2d 480 (M.D.N.C. 2002), for the proposition that the REDA claim is so integrally related to Plaintiff's workers' compensation claim that it must "arise out of" Plaintiff's workers' compensation claim.  The Wiley case, however, involved the issue of removal under 28 U.S.C. § 1445(c), which states that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."  The Wiley court found that removal of a REDA claim to federal court was improper because the plaintiff's REDA claim was integrally related to the plaintiff's workers' compensation claim.  The court's analysis in Wiley, however, had nothing to do with North Carolina contract law— and, specifically, the law of general releases.  That is, even if REDA is integrally related to North Carolina's Workers' Compensation Act for purposes of the federal removal statute, this does not mean that every release that bars future claims "growing out of the Workers Compensation Act" necessarily includes a REDA claim.  Federal laws regarding the right to remove actions from

7

state to federal court implicate matters of court sovereignty, whereas contract law is intended to reflect the intent of the contracting parties.

Defendant also argues that Plaintiff's REDA claim existed when she signed the Clincher Release. See Travis v. Knob Creek, Inc., 362 S.E.2d 277, 279 (N.C. 1987) (noting that a party's claim must exist when a release is executed for the party to relinquish her right to bring the claim). As Plaintiff points out, however, Plaintiff's right to sue under REDA did not arise until she received the notice to sue letter on until July 24, 2020, which was after she signed the Clincher Release. Therefore, Defendant's contention that her REDA claim existed when she signed the Clincher Release is incorrect. For this additional reason, the Court finds that the Clincher Release executed by the parties does not bar Plaintiff from pursuing her REDA claim in this action.

Finally, in her opposition brief, Plaintiff submits that, after Plaintiff signed the Clincher Release, Defendant directed the attorney handling the workers' compensation Claim to draft another release to present to Plaintiff. See (Doc. No. 10-1, Pl. Ex. A). The second release, attached as Plaintiff's Exhibit A, expressly included the REDA claim in the list of released claims, and stated in relevant part:

> "Releasor further acknowledges and expressly agrees that Releasor is waiving any and all rights Releasor may have had or now has to pursue any claim under any employment statute, including but not limited to Title VII of the Civil Rights Act of 1964 (Title VII), the Family and Medical Leave Act (FMLA), the Age Discrimination in Employment Act (ADEA), the Immigration Reform and Control Act of 1986 (IRCA), the Americans with Disabilities Act (ADA), The Civil Rights Act of 1991, the Employment Retirement Income Security Act (ERISA), and any analogous laws of the State of North Carolina, N.C. Gen. Stat., § 95-240 et seq., any executive order, law or ordinance, or any duty or other obligation arising out of common law, public policy, contract (express or implied), or tort (which includes a release of any rights of claims the undersigned may have pursuant to the decision in Woodson v. Rowland, 329 N.C. 330, 407 S.E. 2d 222 (1991) and its progeny), and any and all other federal, state and local laws and regulations relating to employment."

8

(Id. (emphasis added). Plaintiff states that this subsequent release was submitted to Plaintiff after she signed the Clincher Release on April 20, 2020, along with an offer of consideration of $100.00 to sign the Agreement. Plaintiff refused to sign the second release and made a counteroffer to settle the claim, but no further offer was made. Plaintiff argues that this subsequent release that Defendant attempted to persuade Plaintiff to sign is a comprehensive release of all claims, including the REDA claim that Defendant now claims the Clincher Release encompassed. Plaintiff further argues that logic dictates that if the Clincher Release did serve to release the REDA claim, then Defendant would have no reason to pay Plaintiff to sign another release that expressly waived the REDA claims and other claims.

The Court agrees that the proposed release, which Plaintiff refused to sign, is further proof that the parties did not intend for the Clincher Release to release Defendant from bringing a REDA claim. Although Defendant complains that this extrinsic evidence should not be considered, the law of releases in North Carolina is well settled that proof of contrary intent is allowed to show that a release was not intended to waive and release and all claims that a plaintiff may have. See Hardin, 682 S.E.2d at 735. Moreover, to the extent that Defendant argues that the terms unambiguously also incorporate REDA claims (and, thus, the Court may not look beyond the "four corners" of the Clincher Release), the Court disagrees. In other words, the phrase "growing out of the terms and provisions of the North Carolina Workers' Compensation Act" does not unambiguously incorporate a North Carolina REDA claim.[4] Thus,

---

[4] Similarly, North Carolina's parol evidence rule does not apply, as the parol evidence rule only "prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is used to contradict, vary, or explain the written instrument." Carolina First Bank v. Stark, Inc., 660 S.E.2d 641, 646 (N.C. Ct. App. 2008) (emphasis added) ("The credit memoranda regarding the 2001 loan were created after the execution of the guaranties. Therefore, the parol evidence

9

this Court may consider the proposed release that Plaintiff refused to sign in discerning the parties' intent when executing the Clincher Release.

In sum, for all the reasons stated herein, the Court finds that, by signing the Clincher Release as part of her workers' compensation settlement, she did not relinquish her right to bring her REDA claim against Defendant in this action. The Court will, therefore, deny Defendant's motion to dismiss and/or motion for summary judgment.

## IV. CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss, or alternatively, for summary judgment, is denied.

**IT IS THEREFORE ORDERED** that:

(1) Defendant's Motion to Dismiss and/or Motion for Summary Judgment, (Doc. No. 7), is **DENIED**, and the Plaintiff may proceed with her REDA claim in this action.

Signed: February 23, 2021

Max O. Cogburn Jr
United States District Judge

---

rule would not apply."). Here, the proposed general release, which Plaintiff refused to sign, was offered only after the parties executed the Clincher Release.