UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-337-MOC-DCK

| | |
|---|---|
| LAKITA SIMMONS, <br><br> Plaintiff, <br><br> v. <br><br> ACCORDIUS HEALTH, LLC, <br><br> Defendant. | ORDER |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant Accordius Health, LLC. (Doc. No. 23).

## I. BACKGROUND

### A. Procedural Background

Plaintiff filed this action in state court on October 20, 2020, alleging that her former employer Accordius Health, LLC, terminated her employment in retaliation for her bringing a workers' compensation claim after she was injured at work, in violation of North Carolina's Retaliatory Employment Discrimination Act, N.C. GEN. STAT. 95-243 et seq.

Defendant removed the action to this Court on November 23, 2020. On December 30, 2021, Defendant filed the pending summary judgment motion, seeking dismissal of Plaintiff's claim. Plaintiff filed a response on January 26, 2022, Defendant filed a Reply on February 2, 2022, and the Court held a hearing on February 11, 2022.

### B. Factual Background

1

According to the allegations in Plaintiff's verified Complaint and her deposition testimony, Plaintiff worked as a CNA for Defendant. This position required her to assist patients with daily living, including feeding, showering, and transportation. (Simmons Dep. at 10). An essential function of this job required Plaintiff to lift, push, or pull at least 50 pounds. (Id. at 31).

On November 25, 2018, Plaintiff suffered an on-the-job injury to her back. (Id. at 36). Immediately after the injury, Plaintiff notified her supervisor, who initiated a workers' compensation claim. Plaintiff's supervisor provided Plaintiff with the paperwork necessary to receive benefits. (Id.). Plaintiff's physician restricted her from working until March 2019. (Id. at 40).

Plaintiff returned to work on light duty on or about March 23, 2019. Plaintiff's physician provided work restrictions that Plaintiff was not to lift more than 50 pounds. (Id. at 42-47). Plaintiff went back to work under those restrictions, but immediately started having problems with work duties beyond her restrictions. (Id. at 61-62). Her job duties included making food trays, placing them on a roller cart, and pushing the carts down the hallway. (Id. at 42). According to Plaintiff, her job duties required her to lift constantly above her weight restrictions imposed by her treating physician. (See Doc. No. 23-2, p. 8).

Plaintiff consulted with her orthopedic surgeon, who performed an MRI in early April. He also reduced her lifting restrictions to 10 pounds due to her condition at that time. (Pl. Ex. 1). Plaintiff testified that for about two months she struggled to succeed in the purported "light duty" position, but she had difficulty managing her back injury and did not show for her shifts. Plaintiff complained about her job duties and requested light duty to her immediate supervisor in the kitchen. (Simmons Dep. at 43). According to Plaintiff, the kitchen manager did not respond. (Id.).

On April 30, 2019, Plaintiff reported that she was having to push patients in wheelchairs and again the nurse sent a work restriction of ten pounds. (See Pl. Ex. 3). Then again on May 6, 2019, Plaintiff said that she was suffering through duties in the kitchen loading and pushing carts, further exacerbating her pain. (See Pl. Ex. 4). Plaintiff had to go out of work due to the exacerbation of her back injury later in May. On July 8, 2019, Defendant terminated Plaintiff's employment. (See Ex. 2).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th

Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

### III.  DISCUSSION

North Carolina's Retaliatory Employment Discrimination Act ("REDA"), set forth in N.C. GEN. STAT. § 95-241(a), provides, in relevant part:

> "[n]o person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to ... [f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, …with respect to ... Chapter 97 of the General Statutes," the Workers' Compensation Act, N.C. GEN. STAT. § 97-1 (2020) et seq."

To prevail under REDA, a plaintiff must show as her prima facie case that: (1) she exercised his rights as listed under N.C. GEN. STAT. § 95-241(a), (2) she suffered an adverse employment action, and (3) that the alleged retaliatory action was taken because the employee exercised her rights under N.C. GEN. STAT. § 95-241(a). Wiley v. UPS, Inc., 594 S.E.2d 809, 811 (N.C. Ct. App. 2004). If the plaintiff presents a prima facie case, the burden shifts to the defendant to

"show that there was a valid reason for any actions it took regarding [her]." <u>Lilly v. Mastec N. Am., Inc.</u>, 302 F. Supp. 2d 471, 481 (M.D.N.C. 2004). Once a defendant meets this burden, "plaintiff then has to demonstrate that the apparently valid reason was actually a pretext for discrimination." <u>Id.</u>

The Court finds that Plaintiff has met her prima facie case. Therefore, Defendant must show that there was a valid reason for firing Plaintiff. Defendant contends that it fired Plaintiff because Plaintiff left work because she was unable to perform even light duties at work. Defendant also asserts that the alleged retaliatory action was too far removed in time to be considered a result of Plaintiff's protected activity. For the following reasons, the Court rejects both of Defendant's arguments.

First, as to temporal proximity, the North Carolina Court of Appeals has held that "requiring a close temporal connection would allow employers to circumvent the statute. By simply delaying the retaliatory firing for several months, an employer could prevent a REDA claim from ever going forward, even where there is direct evidence of a wrongful motive." <u>Tarrant v. Freeway Foods of Greensboro, Inc.</u>, 593 S.E.2d 808, 813 (N.C. Ct. App. 2004). Rather, the major concern is actual causation, not mere proximity in time. <u>Id.</u> The Court declines to find as a matter of law that the eight-month period between when Plaintiff took workers' compensation and was terminated was too remote to preclude a retaliation claim.

Next, as to Defendant's contention that it fired Plaintiff because she left work when she couldn't perform her duties, Plaintiff's verified Complaint asserts that when she returned to work with Defendant, Defendant placed her in a position that was beyond her work restrictions ordered by her doctor and that Defendant then terminated her employment when she was unable to continue to perform those duties. Defendant contends that Plaintiff has produced no evidence

5

Case 1:20-cv-00337-MOC-DCK    Document 31    Filed 03/17/22    Page 5 of 6

that the work she was required to do exceeded her work restrictions. By the same token, however, Defendant has not provided evidence that the work Plaintiff was required to do was <u>within</u> Plaintiff's work restrictions. As Plaintiff has argued, if Defendant intentionally required Plaintiff to perform work that exceeded her work restrictions, this act in and of itself could be considered retaliatory if Defendant knew Plaintiff would be unable to perform this work. In other words, by requiring an employee to work beyond her restrictions when she returns from workers' compensation leave, an employer can intentionally effect a constructive discharge as a retaliatory action against the employee.

In sum, the Court finds that Plaintiff has raised a genuine issue of disputed fact as to whether there was a causal connection between her workers' compensation filing and being fired. Thus, Defendant's summary judgment motion is denied.

## IV. CONCLUSION

For the reasons stated herein, the Court denies the summary judgment motion.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 23), is **DENIED**. Plaintiff's claim shall proceed to trial.

Signed: March 17, 2022

*[Signature]*

Max O. Cogburn Jr.
United States District Judge

6